COUNTY OF WAYNE *v.* STATE DEPARTMENT OF SOCIAL
WELFARE.

1. HOSPITALS—CARE OF MENTALLY-ILL PATIENTS—STATE PAYMENTS
TO COUNTIES—STATUTES.

Limit imposed upon amount State was to pay for care of public
mentally-ill patients in county hospital by statute containing
a terminal date for such restriction and which limit was raised
by another statute for fiscal year immediately following such
terminal date expressed a legislative intent to continue a
limit, and where a similar restriction was placed upon State
payments by subsequent statutes, the State was not liable for
cost of care in excess of such limits (CL 1948, § 330.59; PA
1948 [1st Ex Sess], No 23; PA 1949, No 301; PA 1950 [Ex
Sess], No 32; PA 1951, No 272; PA 1952, No 255; PA 1953,
No 228).

2. STATUTES—CONSTRUCTION—INTENT.

All acts relating to the same subject, or having the same general
purpose, should be read in connection with statute being con-
strued in order to determine the legislative intent.

3. SAME—IN PARI MATERIA.

Statutes *in pari materia* must be read and construed together.

4. HOSPITALS—STATUTES—APPROPRIATIONS—CARE OF MENTALLY-ILL
PATIENTS—STATE PAYMENTS TO COUNTIES.

Appropriation acts imposing a maximum limit per patient day
for State payment to counties for care of mentally-ill patients
in county hospital must be read as *in pari materia* with stat-
utes imposing liability for such care upon the State (CL 1948,
§ 330.59; PA 1948 [1st Ex Sess], No 23; PA 1949, No 301;
PA 1950 [Ex Sess], No 32; PA 1951, No 272; PA 1952, No
255; PA 1953, No 228).

5. APPEAL AND ERROR—QUESTIONS REVIEWABLE—PLEADING—EQUAL
PROTECTION OF THE LAW.

Plaintiff's claim of deprivation of equal protection of the laws
is not considered by Supreme Court, where no facts were plead-
ed to support such claim and it and related questions raised
are not relevant to the main question of plaintiff's right to
recover as asserted.

---

REFERENCES FOR POINTS IN HEADNOTES

[2, 3] 50 Am Jur, Statutes §§ 347–355.
[4] 50 Am Jur, Statutes § 350.
[6] 14 Am Jur, Costs § 34.

6. COSTS—PUBLIC QUESTION—CARE OF MENTALLY-ILL PATIENTS.
    No costs are allowed in proceeding by county to recover from
        State the difference between the alleged actual cost to plaintiff
        for care of mentally-ill patients at county hospital and amount
        State has paid plaintiff therefor, a public question being in-
        volved (CL 1948, § 330.59; PA 1948 [1st Ex Sess], No 23;
        PA 1949, No 301; PA 1950 [Ex Sess], No 32; PA 1951, No
        272; PA 1952, No 255; PA 1953, No 228).

Appeal from Court of Claims; Souter (Dale), J., presiding. Submitted June 15, 1955. (Docket Nos. 72, 73, Calendar Nos. 46,286, 46,287.) Decided October 3, 1955.

. Claim by the County of Wayne, a municipal corporation, against the State of Michigan, the State Department of Social Welfare, the Michigan Social Welfare Commission, the Department of Mental Health, and the Commission of Mental Health, for differential between appropriated sums and actual cost of keeping patients at Wayne County Insane Asylum at Eloise and Wayne County Home Training School at Northville from January 1, 1949 to March 31, 1952. Similar claim for period from April 1, 1952 to March 31, 1953. Claims dismissed. Plaintiff appeals. Affirmed.

*Gerald K. O'Brien,* Prosecuting Attorney, *Hobart Taylor, Jr., Philip A. McHugh* and *Aloysius J. Suchy,* Assistant Prosecuting Attorneys, for plaintiff.

. *Thomas M. Kavanagh,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Russell A. Searl,* Assistant Attorney General, for defendants.

DETHMERS, J. Suit was brought in the court of claims to recover a sum representing the difference between the alleged actual cost to plaintiff for care of mentally-ill patients at Wayne county hospital at

Eloise and the amount the State has paid plaintiff therefor.

Commitments of such patients to Eloise, if residents of Wayne county, are permitted under authority of CL 1948, § 330.59 (Stat Ann 1953 Cum Supp § 14.848), which provides in part:

"Sec. 49. * * * And the State shall pay to said Wayne county insane asylum at Eloise the cost of the support and maintenance of all public charges so admitted while under treatment in said county asylum: * * * Provided, That the costs of said support and maintenance for the biennial period ending June 30, 1947, for the care of State patients in Eloise shall be made at the rate of $2.35 per patient day: Provided further, That should the costs of care to the county of Wayne prove to be less than $2.35 per patient day, then the payments shall be made on the basis of cost."

The general provisions of this section permitting commitment of Wayne residents to Eloise first came into Michigan statutory law by PA 1903, No 217, § 54, which contained the proviso:

"That the cost of said support and maintenance shall not exceed the per capita amount expended by the Eastern Michigan Asylum for the care of State patients."

PA 1923, No 151, § 49, superseded section 54 of the 1903 act, substituting as the limit upon the cost of such support the cost of supporting State patients at the Pontiac State Hospital. Section 49 was amended by PA 1937, No 104, to raise the limit to not to exceed 20% in excess of such cost at the Ypsilanti State Hospital. This, in turn, was amended by PA 1944 (1st Ex Sess), No 42, to increase the limit to not to exceed 40% in excess of the costs of supporting State patients at certain State hospitals. By PA 1945, No 235, the limitation of section 49 was

amended to substitute the $2.35 per patient day limitation first above set forth. The latter proviso, or limitation, was re-enacted in PA 1946 (2d Ex Sess), No 4, and PA 1947, No 108. The same 1947 session of the legislature, which by Act No 108 again provided that the $2.35 per patient day limit should apply to the biennial period ending June 30, 1947, likewise enacted Act No 306 which appropriated for the ensuing fiscal year beginning July 1, 1947, for care of State patients at Eloise, at the express rate of $2.90 per patient day. There followed P.A 1948 (1st Ex Sess), No 23; PA 1949, No 301; PA 1950 (Ex Sess.), No 32; PA 1951, No 272; PA 1952, No 255; and PA 1953, No 228, each appropriating for the ensuing fiscal year for the care of State patients at Eloise at rates increasing from year to year from $3.27 per patient day in the 1948 act to $4.15 per patient day in the 1953 act. Since June 30, 1947, the State has paid plaintiff for the care of such patients at Eloise at the rates prescribed in the mentioned appropriating acts. Plaintiff says that the actual cost to it for such care since that date has exceeded such payments and sues for the difference. From orders dismissing plaintiff's petitions and statements of claim therefor, plaintiff appeals here.

Plaintiff contends that the limits on the amount to be paid by the State to plaintiff for the care of such patients at Eloise, expressed in section 49, as amended from time to time, finally expired on June 30, 1947, and that thereafter the section must be read to require payment by the State to plaintiff of the full cost of such care without limitation thereon.

Defendants point to the fact that in the very session in which the legislature by PA 1947, No 108, reenacted the limit of $2.35 per patient day for the biennial period ending June 30, 1947, it at the same time adopted Act No 306, appropriating for such

care at the rate of $2.90 per patient day. Defendants contend that this discloses a legislative intent to continue a limitation, at $2.90 per day, refuting plaintiff's claim that the termination in PA 1947, No 108, of the $2.35 per patient day limitation as of June 30, 1947, was expressive of a legislative intent that after that date no limit should rest on the obligation of the State to pay plaintiff the full cost of such care.

We think the legislative intent is clearly expressed. Until 1947 section 49 was amended from time to time to increase the amounts to be paid plaintiff for the care in question, no doubt in response to constantly increasing costs of living. By PA 1947, No 108, the $2.35 limit was made to expire June 30, 1947, and by Act No 306 of that same session the rate for the ensuing fiscal year was fixed at $2.90 per day as effectively as if it had been accomplished, as in previous sessions, by amendment of section 49. This legislative intent to limit the amount of the cost to be paid by the State to plaintiff for such care is likewise expressed in the mentioned appropriating acts of each of the sessions succeeding that of 1947. In *Remus* v. *City of Grand Rapids,* 274 Mich 577, 581, this Court said:

"The controlling question for determination is the intent of the legislature.

" ' "In the construction of a particular statute, or in the interpretation of any of its provisions, all acts relating to the same subject, or having the same general purpose, should be read in connection with it, as together constituting one law. The endeavor should be made, by tracing the history of legislation on the subject, to ascertain the uniform and consistent purpose of the legislature, or to discover how the policy of the legislature with reference to the subject matter has been changed or modified from time to time." 36 Cyc, pp 1147–1149.'

(Quoted in *Miles, ex rel. Kamferbeek,* v. *Fortney*, 223 Mich 552, 558.)"

PA 1947, No 108, terminating the $2.35 per day limitation as of June 30, 1947, and the mentioned provisions of the appropriating acts are *in pari materia* and must be read and construed together. *VanAntwerp* v. *State,* 334 Mich 593; *Reed* v. *Secretary of State,* 327 Mich 108; *Michigan Good Roads Federation* v. *State Board of Canvassers,* 333 Mich 352. So read the conclusion is inescapable that the legislature did not intend to remove all limits on the amounts to be paid by the State to plaintiff for such care, but to fix such limits by the provisions of the appropriating acts.

No facts are pleaded to support plaintiff's claim of deprivation of equal protection of the laws. Accordingly, we need not consider it or the related questions raised which, in consequence, are not relevant to the main question of plaintiff's right to recover as asserted.

Affirmed, without costs, a public question being involved.

Carr, C. J., and Butzel, Smith, Sharpe, Boyles, Reid, and Kelly, JJ., concurred.