BENJAMIN *v.* CITY OF HUNTINGTON WOODS. ·

1. MUNICIPAL CORPORATIONS—RESOLUTIONS—VALIDITY—STATUTES.
   An official resolution of a municipal corporation, otherwise effective to accomplish a lawful purpose, is not rendered void by the erroneous citation of the wrong statute when no statute is required to be cited.

2. SAME—BOUNDARY CHANGES—ANNEXATION OF FRACTIONAL PARTS OF SUBDIVISION LOTS—PETITION—ELECTIONS.
   A boundary between 2 cities whereby subdivision lots are divided into fractional parts may be changed by action of the legisla-

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 37 Am Jur, Municipal Corporations § 144 *et seq.*
[2, 4, 5] 37 Am Jur, Municipal Corporations § 23 *et seq.*
[2, 4, 5] Proper remedy or procedure for attacking legality of proceedings annexing territory to municipal corporation. 18 ALR2d 1255.
[3] 50 Am Jur, Statutes § 298.

tive bodies thereof annexing the remainder of such lots to one or the other of the respective cities under statutory provision permitting such action to be taken without subjecting the matter to provisions relative to petition and a vote of the respective electorates (CL 1948, §§ 117.6, 117.9).

3. STATUTES—CONSTRUCTION.
    A reasonable construction of a statute is sought in order to accomplish the purpose of the statute.

4. MUNICIPAL CORPORATIONS—BOUNDARY CHANGES—ANNEXATION OF FRACTIONAL PARTS OF SUBDIVISION LOTS—STATUTES.
    Action of 2 city legislative bodies in altering the joint portion of their boundaries so as to include all of subdivision lots, theretofore divided by the boundary, in one city or the other, is not disturbed, where effected without petition or electoral approval, no question as to lack of notice, lack of hearing or failure of due process was raised either in the trial court or the Supreme Court and the power of the legislature to delegate authority to effect such changes by the city legislative bodies in such manner is not questioned (CL 1948, §§ 117.6, 117.9).

5. COSTS—PUBLIC QUESTION—ANNEXATION OF FRACTIONAL PARTS OF SUBDIVISION LOTS.
    No costs are allowed in suit to set aside resolutions of 2 city legislative bodies annexing fractional parts of subdivision lots into one city or the other so as to establish joint boundary along lot lines, a public question being involved (CL 1948, §§ 117.6, 117.9).

Appeal from Oakland; Holland (H. Russel), J. Submitted January 10, 1957. (Docket No. 42, Calendar No. 46,969.) Decided September 4, 1957. Rehearing denied November 26, 1957.

Bill by Harry S. Benjamin, Jr., and Mary D. Benjamin against the City of Huntington Woods and the City of Royal Oak, both municipal corporations, to set aside resolutions establishing new boundary commensurate with platted lot lines. Decree for plaintiff. Defendant City of Royal Oak appeals. Reversed and bill dismissed.

*Harcourt S. Patterson,* for plaintiffs.

*Allan G. Hertler,* for defendant City of Royal Oak.

*James S. Thorburn,* City Attorney, for defendant-appellee City of Huntington Woods, asking affirmance.

EDWARDS, J.    There may be more to this litigation than meets the eye. For here we have a suit in equity which on its face recites little if any damage to the 2 individuals concerned. And it comes to us on appeal from a circuit judge's decree in favor of those individuals but without any indication as to the basis for his holding. It appears that plaintiffs and appellees, Mr. and Mrs. Benjamin, earnestly desire to maintain taxpayer status in both Huntington Woods and Royal Oak. Just why does not appear.

Under these circumstances we must deal with the rather technical questions which are presented. The first attacks an error in 2 resolutions one of the city council of Huntington Woods and the other of the city council of Royal Oak. The second requires a construction of the statute provision pertaining to annexation of fractional lots formed by the boundary line of 2 adjacent cities.

Mr. and Mrs. Benjamin own a lot which was crossed by the Huntington Woods-Royal Oak boundary line. What the resolutions sought to accomplish may be quickly portrayed to the eye by the before and after sketches below:

The Benjamin's lot is No. 150 of the Huntington Woods subdivision and their address is given as 26020 York Road, Huntington Woods. In view of the portrayal of the original boundary line crossing the rearmost portion of the lot in question and in view of the Huntington Woods address, we assume that the Benjamin home was and is located in Huntington Woods. It would seem, therefore, that what the Benjamins had lost was the privilege (if such it be) of having the fractional rearmost portion of their lot taxed by the city of Royal Oak. The stipulation of facts does recite that by the change the Benjamins lost certain tax-supported services of the city of Royal Oak:

"The plaintiffs, since the adoption of the resolutions set forth in exhibits 'A' and 'B' and the carrying out of such resolutions, are no longer entitled to police and fire protection, library facilities, recreation facilities, garbage and rubbish collection, and other services afforded to taxpayers within the city of Royal Oak, which services the plaintiffs were entitled to, and had, as taxpayers in the city of Royal Oak, prior to the adoption and carrying out of the resolutions."

There is however, no allegation, testimony or stipulation that indicates that the same or similar services are not available to the Benjamins from the city of Huntington Woods or that such services are in anywise inferior.

We turn now to the legal issues. The first pertains to plaintiffs' complaint that exhibits "A" and "B" (the resolutions of the 2 cities purporting to effect the above-described boundary change) are ineffective and void because they recite reliance upon PA 1947, No 36.* Defendant and appellant concedes

---

* Section 9 was amended by PA 1947, No 36, approved April 11, 1947, and by PA 1947, No 334, approved July 3, 1947, the latter being in force when the resolutions were adopted.—Reporter.

that this citation was in error but contends that since no recital of the statute was essential that the error was in the area of surplusage and, hence, not fatal to the effectiveness of the resolution.

We agree. An official resolution, otherwise effective to accomplish a lawful purpose, is not rendered void by the erroneous citation of the wrong statute when no statute is required to be cited. *North Main Land Co.* v. *Willson,* 245 Mich 537; *Thomson* v. *City of Dearborn,* 348 Mich 23.

The second issue requires consideration of a recent amendment to the statute pertaining to incorporation of cities and more particularly to sections 6 and 9 thereof which are quoted in full below:

"Sec. 6. Cities may be incorporated or territory detached therefrom or added thereto, or consolidation made of 2 or more cities or villages into 1 city, or of a city and 1 or more villages into 1 city, or of 1 or more cities or villages together with additional territory not included within any incorporated city or village into 1 city, by proceedings originating by petition therefor signed by qualified electors who are freeholders residing within the cities, villages or townships to be affected thereby, to a number not less than 1 per centum of the population of the territory affected thereby according to the last preceding United States census, or according to a census to be taken as hereinafter provided, which number shall be in no case less than 100, and not less than 10 of the signatures to such petition shall be obtained from each city, village or township to be affected by the proposed change: Provided, That in the incorporation of a city from an existing village without change of boundaries the requisite number of signatures may be obtained from throughout the village without regard to the townships in which the signers are residents: Provided further, That as an alternate method in the case of an annexation proceeding in which there are less than 10 persons qual-

ified to sign the petition living in that unincorporated territory of any township or townships proposed to be annexed to a city, that the signatures on the petition of persons, firms, corporations, the United States government, or the State or any of its subdivisions who collectively hold record legal title to more than 1/2 of the area of the land exclusive of streets in the territory to be annexed at the time of filing the petition, will suffice in lieu of obtaining 10 signatures from the township in which such area to be annexed lies: And provided further, That on such petition each signature shall be followed by a description of the land and the area represented thereby and a sworn statement shall also accompany such petition giving the total area of the land, exclusive of streets, lying within the area proposed to be annexed: Provided further, That before any signatures are obtained on a petition as hereinbefore provided, such petition shall have attached to it a map or drawing showing clearly the territory proposed to be incorporated, detached, or added, and each prospective signer shall be shown such map or drawing before signing the petition. Such petition shall be verified by the oath of 1 or more petitioners: Provided, That in proceedings for the incorporation of a new city or the consolidation of 2 or more cities or villages into 1 city, or of a city and 1 or more villages into 1 city or of 1 or more cities or villages together with additional territory not included within any incorporated city or village into 1 city, a petition signed by not less than 100 qualified electors who are freeholders residing within the territory so proposed to be incorporated or consolidated, praying for the taking of a census of the inhabitants of the territory affected thereby, may be filed with the county clerk of the county within which said territory is located. The county clerk shall, within 5 days after the filing of such petition, certify to the mayor of each city, president of each village and supervisor of each township affected thereby, and to the secretary of State that such petition has

so been filed. Within 5 days after the service of such certificate, the secretary of State shall appoint an enumerator or enumerators to enumerate the inhabitants of each such city, village, and the portions of each township proposed to be so incorporated, or a consolidation made thereof. Before entering upon the duties of his said office, each such enumerator shall take and subscribe to the constitutional oath of office before some officer authorized to administer oaths and file the same with the secretary of State and with the county clerk of the county in which such territory is located. It shall be the duty of each enumerator so appointed to enumerate all of the bona fide inhabitants of such city, village or township, territory or portion thereof to him assigned by the secretary of State and to visit each house or dwelling and to obtain the names of each known resident thereof. Each enumerator so appointed shall receive for his services not to exceed $5.00 per day, together with his actual and necessary expenses therefor, which sum shall be paid by the city, village or township within which the services of such enumerator were rendered. Upon completing such enumeration it shall be the duty of the persons so appointed to make a return in duplicate of such enumeration showing the names of the inhabitants of each such city, village or township, territory or district to the county clerk and to the secretary of State. No such enumeration or census shall be conducted in any city, village or township, or portion thereof, within 2 years of the date of the last enumeration in such territory. Every such enumeration shall be conducted under the general supervision and control of the secretary of State who is hereby empowered to make rules and regulations for the purpose of carrying out the provisions of this act."

"Sec. 9. The district to be affected by every such proposed incorporation, consolidation or change of boundaries shall be deemed to include the whole of each city, village or township from which territory is to be taken or to which territory is to be an-

nexed: Provided, however, That when a territory is proposed to be incorporated as a city only the residents of the territory to be incorporated shall vote on the question of incorporation. Any proposed consolidations or changes of boundaries shall be submitted to the qualified electors of the city, and to the qualified electors of the city, village or township from which the territory to be taken is located, and at the election when said question is voted upon, the city, village or township shall conduct the election in such manner as to keep the votes of the qualified electors in the territory proposed to be annexed or detached in a separate box from the one containing the votes from the remaining portions of such city, village or township: Provided, however, That territory may be attached or detached to or from cities having a population of 15,000 or less if a majority of the electors voting on the question in the city to or from which territory is to be attached or detached, and a majority of the electors from that portion of the territory to be attached or detached, as the case may be, both vote in favor of such proposition. If the returns of said election shall show a majority of the votes cast in the district to be annexed, voting separately, to be in favor of the proposed change of boundary, and if a majority of the electors voting in the remainder of the district to be affected as herein defined, voting collectively, are in favor of the proposed change of boundary, then such territory shall become a part of the corporate territory of the city or shall be detached therefrom, as the case may be. If no qualified electors reside in the territory proposed to be annexed or detached at the time of filing said petition with the clerk of the board of supervisors, as provided in section 8 of this act, and if a majority of the electors voting in the district to be affected as herein defined. voting collectively, are in favor of the proposed change of boundaries, then such territory shall become a part of the corporate territory of the city or shall be detached therefrom, as the case may be.

*Where the territory proposed to be annexed to any city is adjacent to said city and consists of a park or vacant property located in a township and owned by the city annexing the same, and there is no one residing thereon, such territory may be annexed to said city solely by resolution of the city council of said city or in any case where the territory proposed to be annexed is adjacent to said city and consists of fractional parts of platted subdivision lots, located in an adjoining city, village, or township, such annexation may also be accomplished by the affirmative majority vote of the legislative body of such city and the approval of the legislative body of such adjoining city, village or township:* Provided further, That as an alternate method, where there are no qualified electors residing in the territory proposed to be annexed to said city, a petition signed by a person or persons, firms, corporations, the United States government, or the State or any of its subdivisions who collectively hold the record legal title to more than 1/2 of the area of the land in the territory to be annexed is filed with the city council of said city and with the township board of the township in which such territory is situated, such annexation may be accomplished by the affirmative majority vote of the city council of such city and the approval of the township board of such township: Provided further, That at least 10 days prior to the approval by the township board, the township treasurer shall notify personally or by registered mail with return receipt demanded, the owners of all real property in the territory to be annexed as shown on the assessment rolls of the township at the last known address on file with the township treasurer. This section shall not be construed so as to give any city the authority to proceed hereunder to attach territory from any other city unless the question relative thereto has been voted upon by the voters of the entire cities affected, *except as hereinbefore specifically provided, where the territory proposed to be annexed is adjacent to a city and consists of*

*fractional parts of platted subdivision lots, located in an adjoining city."* CL 1948, §§ 117.6, 117.9 (Stat Ann §§ 5.2085, 5.2088).*

Plaintiff, appellee and apparently the chancellor below read these 2 sections together and believe that the petition requirement of section 6 is applicable to the italicized portion of section 9 applicable to annexation of vacant park property and fractional lots.

The question is one of first impresssion and we find little help in the authorities cited to us. A reading of the entire statute however, makes it appear that the petition requirement is obviously primarily applicable to those incorporation, annexation or boundary change matters which must by statute be submitted to the voters. We believe that the italicized portion of section 9 gives 2 entirely alternative methods of boundary change in 2 narrowly limited instances: One where the land to be annexed is park property owned by the city and lying adjacent to its boundary and the other where the boundary line between 2 cities sought to be altered divides subdivision lots into fractional parts.

In both instances the objective is obviously convenience of administration of municipal government and there would seem to be little logic in requiring 1% of the entire populations of the city or cities to be affected to sign petitions as a condition precedent to a change of such a limited nature. The language of the statute does not compel such an answer and on the contrary suggests an opposite conclusion.

We seek a reasonable construction of statutes in the light of the purpose sought to be accomplished. *Geraldine* v. *Miller,* 322 Mich 85; *Lakehead Pipe Line Company, Inc.,* v. *Dehn,* 340 Mich 25.

---

* These sections have been last amended subsequent to the actions complained of in this case by PA 1956, No 77 and No 68.

: We do not deal in this case with any claim of lack of notice, lack of hearing or failure of due process, no such issues having been raised below or here. Nor do appellees dispute the power of the legislature to delegate authority to the legislative bodies of the cities concerned to effect this boundary change without either petition or vote. See *Village of Kingsford* v. *Cudlip,* 258 Mich 144; 2 McQuillin, Municipal Corporations (3d ed), §§ 7.03, 7.10.

For the reasons outlined above, the decree will be reversed, the cause remanded to the circuit court for the entry of a decree dismissing the bill of complaint. No costs, a public question being involved.

DETHMERS, C. J., and SHARPE, SMITH, VOELKER, KELLY, CARR, and BLACK, JJ., concurred.